WILLIAM MILLER B/N/F KATHLYN MILLER *v.* DALE H. GRIESEL, VELMA J. HALL AND SCHOOL CITY OF EAST GARY.

[No. 374S69. Filed March 22, 1974. Rehearing denied July 26, 1973.]

*Thomas H. Singer, Lysohir and Singer,* of South Bend, for appellants.

*Patrick J. Dougherty,* of Valparaiso, for appellees.

DeBruler, J.—Plaintiff, William Miller, brought an action alleging negligence against his Fifth Grade teacher, the Principal of his grade school and the School City of East Gary as a result of injuries sustained by him during a recess period at the school. He contended that the several defendants here failed in their overall duty to use reasonable and due care to provide adequate supervision for the children of the school, and more particularly, that defendant school corporation had failed to institute adequate rules and regulations in order to insure adequate supervision or, if such regulations were issued, failed to implement them.

At the close of the plaintiff's case all three defendants moved for judgment on the evidence pursuant to TR. 50, and the trial court granted the defendants' motion. Miller appealed to the Court of Appeals, Third District, which affirmed the trial court in an opinion found at 297 N. E. 2d 463. He has now filed his petition to transfer with this Court. The petition to transfer is granted and we likewise affirm the decision of the court below.

The evidence produced by the plaintiff at the trial showed that on November 27, 1967, he was a student in the Fifth Grade at the Virgil I. Bailey School in East Gary. The schedule in effect at that time required pupils to eat their lunches between 11:30 a.m. and 11:50 a.m., following which there was a recess period until 12:20 p.m. The children were required to eat in classrooms but could either go outside or remain in the classrooms during the recess period.

The Board of Trustees of the School City of East Gary had adopted administrative guidelines which made the principal of each school, "the responsible head and professional leader of the school." *School Board and Administrative Manuel of School City of East Gary,* § 2.33 (2). Pursuant to this rule the principal of the Virgil Bailey School had issued a verbal directive that required teachers to remain in their respective classrooms with the children during the lunch period, but allowed them to leave during the recess period if the teacher could get someone to "look in on" the pupils remaining in the rooms.

On this particular day the teacher stayed in the room for the lunch period and then left the room for the recess period after she had requested another teacher to periodically look in on the children who were going to stay in the classroom. There were approximately ten fifth graders who remained in the room in order to work on a salt relief map the class was constructing as part of a Social Science project. During the teacher's absence one of the students, Guy Wedge, produced a tackle box about a foot long and five or six inches

wide. He offered to trade the box to the plaintiff Miller in return for some pencils and Miller approached Wedge's desk, which was located close by the teacher's desk, in order to inspect the box. Wedge opened the box and took out two batteries and a third object which was unfamiliar to Wedge, Miller and some other students who had gathered around the desk. Miller thought it looked like a "Christmas tree light" with two wires extending from it. The "Christmas tree light" was subsequently identified as a detonator cap. Miller touched the two wires to the batteries to see if the "light" was working and an explosion occurred inflicting shrapnel like wounds to the plaintiff's arms, torso, face, groin and left eye. Medical testimony at the trial indicated that the injury to the eye was of some seriousness and would result in permanent damage or blindness. Although there was no evidence elicited at the trial as to how long the teacher was actually away from the room before the explosion took place, there was testimony indicating that a teacher from another room had checked on the students during the regular teacher's absence.

The Court of Appeals affirmed the trial court's granting of the defendants' motion on two grounds: (1) That the teacher's decision to leave or remain during the recess period was "discretionary" as opposed to "ministerial" and thus the defendants here were protected from liability by the doctrine of sovereign or governmental immunity. (2) That the reasonableness of the School's rule concerning a teacher's absence during the recess period was a question of law to be decided exclusively by the court rather than the jury and the trial court could have legitimately found that this rule was reasonable. We disagree with the treatment of these two issues by the Court of Appeals, but affirm that court's finding that the defendants' TR. 50 motion was properly granted by the trial court.

Initially, the Court of Appeals should not have utilized the doctrine of governmental immunity to affirm the holdings of the trial court. Sovereign or governmental immunity is a

complete bar to an action which may be interposed by a government defendant and will prevent liability ■ even in a situation where tortious conduct might otherwise be clearly established. As a legal bar it should be specifically pleaded and established by the party wishing to assert it as a defense. TR. 9(a) ; TR. 8(c).

> "When the state becomes a suitor in any of the courts, it is as much bound by the laws of the land, by the rules of pleading and practice and by the decisions and judgments of the courts, inferior or superior as any other suitor." *State ex rel. Hord* v. *Bd. of Comm. of Wash. Cty.* (1885), 101 Ind. 69 at 74.

A failure to plead and establish such a bar to a suit can be deemed a waiver.

In this case there is nothing contained in any of the pleadings, the pretrial order, the transcript of the evidence, the briefs in the Court of Appeals or the Briefs concerning the Petition to Transfer in this Court which would indicate that any of the defendants were relying on government immunity as a bar to this suit by the plaintiff.[1] Whenever such a defense plays no part in the trial court level litigation it would clearly be improper for an appellate court to raise it for the first time on appeal. *J. I. Case Co.* v. *Sandefur* (1964), 245 Ind. 213, 197 N. E. 2d 519. Moreover, since our decision in *Campbell* v. *State* (1972), 258 Ind. 55, 284 N. E. 2d 733, restricts the blanket immunity once available to a government defendant, it is evident that the question of whether the defense is applicable

---

1. In the pretrial order of the trial court one of the issues to be decided at trial was held to be whether or not defendants were "immune from liability for any damage in excess of the limits of coverage provided by its liability insurance." This is an apparent reference to IC 1971, 27-7-4-2, being Burns § 39-1819, which empowers municipal corporations to purchase liability insurance and contains a clause stating that the insurance carrier shall not be held liable for any amount of damages over the maximum amount named in the policy. There is a distinct difference between this apparent reference to the statute, which questions only the amount of recovery possible to the plaintiff, and the common law doctrine of governmental immunity which, if applicable to a set of facts, constitutes a total bar to any recovery whatsoever.

at all may well turn on the facts of a case and the specific position, responsibilities and duties of the particular defendants. It is improper, therefore, to raise such a devastating bar to an action without giving the plaintiffs the opportunity to litigate the question and raise legal and factual contentions concerning it.

We also disagree with the Court of Appeals' holding that in an action alleging a negligent failure to supervise grammar school pupils, the questions of whether or not a rule existed concerning supervision, and the reasonableness of that rule, are questions of law to be decided exclusively by the trial court, and, if found in favor of the defendants, are ultimately determinative of the cause of action. The cases cited by defendants for this proposition fall into two categories which must be distinguished from the case at hand. The first line of cases hold that the reasonableness of a school regulation is a question of law when the regulation is being challenged as a violation of the constitutional principles of either due process or equal protection. *School City of Evansville v. Culver* (1932), 94 Ind. App. 692, 182 N. E. 270; *Crews v. Cloncs,* 303 F. Supp. 1370 (S. D. Ind. 1969). When confronted with assertions concerning the constitutionality of a school regulation it is beyond question that the reasonableness of the rule is a question of law to be decided exclusively by a court rather than a jury, but the cases asserting this principle are not legitimate precedent for defining the role of a court in a vastly different common law negligence action.

The second line of cases referred to, on the other hand, do involve tort actions and indeed state the proposition that the question of the reasonableness of a school rule is a question of law to be decided by the court rather than a jury. *Fertich v. Michener* (1887), 111 Ind. 472, 11 N. E. 605; *Adams v. Schneider* (1919), 71 Ind. App. 249, 124 N. E. 718. However, it is apparent that this generally stated proposition is a collateral consideration in the overall question in these cases

of the existence of governmental immunity and under what circumstances it might stand as a bar to the action.[2]  As pointed out above that defense has not been interposed in the proceedings by the government defendants and decisions should not be framed on its principles.

Whenever governmental immunity is inappropriate or is not raised in defense of allegedly negligent official conduct, there is no reason why courts should view them differently than non-governmental corporate defendants.  Certain actions and decisions by government agencies and officials may be protected from tort liability by the doctrine of governmental immunity, but if the immunity is not applicable under *Campbell* or if the defense is not raised, the defendants must conform themselves to the same standard of conduct which applies to any citizen or corporation of this State.  Absent the defense of governmental immunity a governmental corporation can be viewed no differently than a private corporation and the elements of a cause of action in negligence would be the same for it as for any other resident of this State.  Evidence such as here, therefore, that a corporate defendant had promulgated certain rules governing the duties of its employees, and questions of whether or not these rules were reasonable, are not questions of law to be decided exclusively and determinatively by the court, but are simply facts of evidentiary significance to be submitted to the jury along with the other evidence in the case in its determination of negligence.  That being the case this appeal, and the actions of the trial court, should be viewed in the following manner.

In Indiana the tort of negligence is comprised of three

2.  The language in *Fertich* v. *Michener* (1887), 111 Ind. 472, 11 N.E. 605, can be further distinguished by the fact that the torts alleged there were not solely acts of negligence but also false imprisonment by requiring a student to remain after school.  The existence and scope of a rule in that case became essentially a question of law since the legal authority invested in a teacher to discipline a student is a recognized defense to the tort of false imprisonment. PROSSER, TORTS § 27 (4th ed. 1971). It is not a defense for the tort of negligence however.

elements: (1) a duty on the part of defendant in relation to the plaintiff; (2) failure on the part of defendant to conform its conduct to the requisite standard of care required by the relationship; and (3) an injury to the plaintiff resulting from that failure. *Neal* v. *Home Builders, Inc.* (1953), 232 Ind. 160, 111 N. E. 2d 280; *Bailey* v. *L. W. Edison Charitable Foundation* (1972), 152 Ind. App. 460, 284 N. E. 2d 141; See also RESTATEMENT TORTS § 281. There are three questions of law to be decided by the trial court concerning these elements before it may submit the case to the jury. The first is whether the law recognizes any obligation on the part of a particular defendant to conform his conduct to a certain standard for the benefit of the plaintiff.

"The duty to exercise care for the safety of another arises as a matter of law out of some relation existing between the parties, and it is the province of the court to determine whether such a relation gives rise to such duty." *Neal* v. *Home Builders, supra.*

The relationship between the parties here is one of grammar school students and school personnel in the respective positions of teacher, principal, and school board. The specific and initial question of law presented, therefore, is whether the law of this State recognizes a duty for school authorities to exercise reasonable care and supervision for the safety of the children under their control. We believe that schools have such a responsibility and that the relationship of school pupils and school authorities should call into play the well recognized duty in tort law that persons entrusted with children, or others whose characteristics make it likely that they may do somewhat unreasonable things, have a special responsibility recognized by the common law to supervise their charges. RESTATEMENT TORTS 2d. § 320; PROSSER, TORTS § 33, p. 172 (4th ed. 1971).

The second question of law concerns what standard of care will the courts impose on this relationship once a duty is recognized. The traditional standard to be applied is whether the defendants exercised their duty with

the level of care that an ordinary prudent person would under the circumstances. *Pierce* v. *Horvath* (1968), 142 Ind. App. 278, 233 N. E. 2d 811. The answers to the first two questions of law posed by this case therefore may be summed up by stating that the common law of this State recognizes a duty on the part of school personnel to exercise ordinary and reasonable care for the safety of the children under their authority.

It should be emphasized here, however, that schools are not intended to be insurers of the safety of their pupils, nor are they strictly liable for any injuries that may occur to them. The duty imposed by this legal relationship is a practical recognition by the law that school officials are required to exercise due care in the supervision of their pupils; that while they are neither an insurer of safety nor are they immune from liability. It is not a harsh burden to require school authorities in some instances to anticipate and guard against conduct of children by which they may harm themselves or others. 38 A. L. R. 3d 830.

The third question of law for the court here is one which courts must pass upon in every civil case; that is whether the evidence introduced by the plaintiff at trial is sufficient as a matter of law to enable the jury to find that the plaintiff has established the elements of the cause of action; in this case the elements of negligence outlined above. The standard to be applied under TR. 50 was correctly outlined in the Court of Appeals' opinion below. The court there stated that a defendant's TR. 50 motion should be granted at the end of plaintiff's case only when there is a lack of reasonable evidence of probative value upon one or more of the factual issues necessary to support a verdict, and there is no reasonable inference that can be drawn from such evidence in favor of the plaintiff.

> "A court should not direct a verdict for a defendant at the close of a plaintiff's evidence unless there is a total absence of evidence or reasonable inference on at least one essential element of plaintiff's case."

*Mamula* v. Ford Motor Co. (1971), 150 Ind. App. 179, 275 N. E. 2d 849.

Applying evidence elicited at trial to the requisite elements of negligence we believe that the plaintiffs failed to meet the basic evidentiary standard outlined above and thus the granting of defendants' TR. 50 motion on that ground was correct. Of course what constitutes due care and adequate supervision depends largely upon the circumstances surrounding the incident such as the number and age of the students left in the classroom, the activity in which they were engaged, the duration of the period in which they were left without supervision, the ease of providing some alternative means of supervision and the extent to which the school board has provided and implemented guidelines and resources to insure adequate supervision. Since the plaintiff failed to show the actual length of time the students were left unattended or that the activity in which they were engaged was particularly hazardous or that any of the students in the room were of a troublesome, mischievious nature we believe the trial court correctly granted the TR. 50 motion.

We hold, therefore, that the issues presented by this case cannot be resolved by relying on the defense of sovereign immunity or by reliance on the principle that the reasonableness of a rule is a matter exclusively for the judgment of the trial court. The questions presented by this case are whether there is a duty recognized at law for school authorities to exercise reasonable care for the safety of their children, and if so, whether the evidence presented by the plaintiff here creates questions upon which reasonable men may differ and therefore should be submitted to the jury. While the law recognizes such a duty between these parties the plaintiffs have failed in their evidentiary duty to present a prima facie case of a breach of that duty and we therefore affirm.

Arterburn, C.J., Givan, Hunter and Prentice, JJ., concur.

NOTE.—Reported in 308 N. E. 2d 701.